## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TERRY CARPENTER,<br>individually and on behalf of all<br>others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HARD ROCK CAFÉ<br>INTERNATIONAL (STP), INC.<br>and HARD ROCK CAFÉ<br>INTERNATIONAL, INC. (GA),<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION NO. _____<br><br>    JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

1. The case implicates Defendants Hard Rock Café International (STP), Inc.'s and Hard Rock Café International, Inc.'s ("Defendants" collectively) violations of the Fair Labor Standards Act's ("FLSA") tip credit requirements and the subsequent underpayment of their employees at the federally mandated minimum wage rate. Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).

### SUMMARY OF ACTION

2. Defendants pay their tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of

the FLSA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligation from the tips received from customers.

3. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise the employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee of the requirements under the FLSA, including: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the worker must receive a minimum "tip credit" hourly rate for all hours worked, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

4. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as

management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA). *See* 29 U.S.C. § 203(m).

6. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to their tipped occupation. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties...such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285

(10th Cir. 2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' work time or for a consecutive period of 30 minutes or more. *See, e.g., Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time."); *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Flood v. Carlson*

*Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8. Defendants violated the FLSA in the following respects:

    a. **Violation for failure to inform:** Defendants failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet their minimum wage obligations. In fact, Defendants failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid; (2) the amount by which the wages are increased on account of the tip credit; (3) that all tips received must be retained except for tips contributed to a valid tip pool; (4) that the hourly rate cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

    b. **Violation for making illegal deductions that reduced the direct wage of Plaintiff below the minimum required hourly wage for**

**tipped employees:**   Plaintiff was required to purchase certain clothing to work for Defendants, which reduced his wages below the minimum hourly wage required for tipped employees.

c. **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to sweeping floors, mopping floors, cleaning bathrooms, taking out trash, cleaning walls, cutting fruit, making various drink mixes, and doing dishes.

d. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for a continuous period of time during a shift**: Plaintiff was required to spend greater than 20% of his time and/or more than 30 consecutive minutes performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, making tea and coffee, restocking ice, setting up fountain machines, rolling silverware, stocking paper products, and cleaning and stocking the serving line, amongst other duties.

9.    Therefore, Defendants did not pay Plaintiff and all similarly situated workers the applicable minimum wage in violation of 29 U.S.C. § 206.  As a result of these violations, Defendants have lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## SUBJECT MATTER JURISDICTION AND VENUE

10. This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff worked in this District, was paid below the minimum wage in this District, and the violation of the law identified in this Complaint occurred in this District.  Additionally, Defendant Hard Rock Café International, Inc. (GA) maintains its principal place of business in this District.

## PARTIES AND PERSONAL JURISDICTION

12. Plaintiff Terry Carpenter is an individual residing in Atlanta, Georgia.  His written consent to this action is attached hereto as Exhibit "A."

13. The Class Members are all current and former tipped employees who worked for Defendants for at least one week during the three year period prior to the filing of this action to the present.

14. Defendant Hard Rock Café International (STP), Inc. is a foreign corporation doing business in Georgia.  Said Defendant may be served with process by serving its registered agent CT Corporation System. at 289 S. Culver St., Lawrenceville, GA 30046.

15. Defendant Hard Rock Café International, Inc. (GA) is a Georgia corporation. Said Defendant may be served with process by serving its registered agent CT Corporation System. at 1201 Peachtree Street, NE, Atlanta, GA 30361.

16. Defendant Hard Rock Café International (STP), Inc. is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privilege of conducting activities in Georgia and established minimum contacts sufficient to confer jurisdiction. Defendant Hard Rock Café International (STP), Inc. does business in Georgia, employs residents of Georgia, advertises in Georgia, and markets to Georgia customers.  Defendant Hard Rock Café International (STP), Inc. also has had and continues to have continuous and systematic contacts with Georgia sufficient to establish general jurisdiction over it.  Moreover, Plaintiff was harmed by Defendants in Georgia. Therefore, the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## COVERAGE

17. At all material times, Defendants have been employers within the meaning of the FLSA.  29 U.S.C. § 203(d).

18. At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of the FLSA.  29 U.S.C. § 203(s)(1).

19. At all material times, Defendants have enjoyed yearly gross revenue in excess of $500,000.

20. At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

21. At all material times, Defendants have operated as a "single enterprise" within the meaning of 29 U.S.C. § 203(r)(1).  That is Defendants perform related activities through unified operation and common control for a common business purpose.

22. Defendants operate a nationwide chain of restaurants with the name "Hard Rock Cafe" under the control of the same senior level management.  Indeed, the restaurants advertise themselves as a unified entity through the same website.

23. Defendants represent themselves to the public as one restaurant operating at multiple locations.  They share employees, have a common management, pool their resources, operate from the same headquarters, have common ownership, and have the same operating name.

24. Defendants operate under a unified business model and part of that unified business model is the wage violations alleged in this Complaint.

25. Thus, Defendants formed a "single enterprise" and are liable for the violations of the other.

## FACTS

26. Defendants operate a nationwide chain of restaurants and casinos under the trade name "Hard Rock Cafe" throughout the U.S.  Specifically, Defendants operate in Colorado, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, New Jersey, New York, Ohio, Pennsylvania, Tennessee, Texas and other states. (*See* https://www.hardrockcafe.com/locations.aspx/, last visited 10/24/2022).

27. Hard Rock Cafe restaurants are full-service restaurants that employ servers and bartenders to provide services to customers.

28. A server gathers orders from customers and delivers food and drinks to the customers.  A server is paid an hourly wage by Defendants and receives tips from customers.  A bartender prepares and serves drinks to customers.  A bartender is paid an hourly wage by Defendants and receives tips from customers.

29. However, Defendants paid these tipped workers less than the minimum wage.

30. Defendants attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff and Class Members.

31. Plaintiff worked for Defendants in San Antonio, Texas and Atlanta, Georgia. He worked as a server and bartender and was paid less than the federal minimum wage. His hourly rate was $2.13 per hour. Plaintiff worked for Defendants during the past three years. He worked from approximately July 2018 to August 2020.

32. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter to large corporations operating restaurants advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited October 24, 2022). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color.** The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

33. Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

34. In this case, Defendants did not satisfy the strict requirements to use the tip credit. Defendants maintained a policy and practice whereby they failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid, (2) the amount by which the wages are increased on account of the tip credit, (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool, (4) that the hourly wage paid to the Plaintiff and Class Members cannot be lower than the minimum tipped wage, (5) that they cannot pay for any work related expenses, and (6) that the tip credit shall not apply to any employee who does not receive the notice, amongst other violations.

35. Defendants also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing

these non-tip generating duties, they did not interact with customers and could not earn tips.

36. These duties include but are not limited to the following: sweeping floors, mopping floors, cleaning bathrooms, taking out trash, cleaning walls, cutting fruit, making various drink mixes, and doing dishes, amongst other activities that were not related to a tipped occupation.

37. Defendants also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20 percent and/or for consecutive periods of time of more than 30 minutes, performing non-tip producing side work related to the employees' tipped occupation.

38. Specifically, Defendants maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, making tea and coffee, restocking ice, setting up fountain machines, rolling silverware, stocking paper products, and cleaning and stocking the serving line, amongst other non-tip producing duties.

39. Further, Defendants required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant, in the middle of their shifts, and after the restaurants closed.  Indeed, Defendants required the Plaintiff

and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendants required the Plaintiff and Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing non-tip producing work before the restaurant was open, in the middle of their shifts, and after the restaurant was closed.

40. Furthermore, Defendants would host numerous private events.  For these private events, Plaintiff and the Class Members were required to arrive at Defendants' restaurants up to two hours before the event started to perform set up work.  This work included decorating and setting up private rooms, ensuring that the menus were correct, and setting up tables.  Additionally, Plaintiff and the Class Members were required to spend approximately two to three hours after the events concluded to clean the private rooms.

41. However, Defendants did not pay their tipped employees the full minimum wage rate for this work. The duties that Defendants required Plaintiff and the Class Members    to    perform    were    duties    that    are    customarily    assigned    to

"back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

42. During Plaintiff's and the Class Members' employment, checklists were posted in Defendants' restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

43. When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

44. Indeed, Defendants did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

45. Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendants failed to track the specific tasks for Plaintiff or the Class Members.

46. Defendants use a point-of-sale system to record hours worked by their tipped employees. Defendants then analyze the information collected by this system, including the labor costs at each of the restaurants. Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments,

but Defendants failed to track the specific tasks for Plaintiff and the Class Members.

47. In the point-of-sale system, Defendants can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

48. However, Defendants did not allow their tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

49. Defendants' managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low.

50. Moreover, Defendants violated the law by not even paying the minimum "tipped" hourly rate. Defendants required their tipped employees to pay for items for their uniform, including pants, belts, and shoes.  These clothing items were required to perform work for Defendants and were primarily for the benefit and convenience of Defendants. The costs for these items were not reimbursed by Defendants.

51. Because Defendants paid their tipped employees at the minimum of $2.13 per hour, any week in which a tipped employee was required to pay for work

related expenses for Defendants' business, his/her compensation fell below the minimum wage rate, thereby negating Defendants' entitlement to claim the tip credit.

52. In other words, by requiring Plaintiff and the Class Members to pay for these work-related expenses, their hourly rates of pay were reduced. As a result, they were not even paid the minimum hourly rate necessary for Defendants to claim the tip credit.

53. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

54. As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage.

55. Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the law. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendants' method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## DUAL JOBS REGULATION

56. On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a new standard for interpreting the dual jobs regulation that was different than the "80/20" rule and prior Department of Labor opinion letters and guidance that had existed for the past approximately 30 years. However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference given the sudden an unexpected change by the Department of Labor. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

57. Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations -under-the-fair-labor-standards-act-flsa).

58. After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021.

(https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

59. After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip producing work that a tipped employee can perform when an employer is taking a tip                                                                                          credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

60. After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

61. Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit. This regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time.

62. Here, Defendants illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendants required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, after they were closed, and before/after private events, when the restaurants did not have customers and there was no opportunity to earn tips. During this time, Defendants paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

63. Given that Defendants failed to comply with the requirements to take the tip credit, Defendants have lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendants.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

64. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

65. Plaintiff has actual knowledge, through conversations with his co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendants with respect to the payment of the minimum wage.

66. The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

67. Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, performed substantial work that was unrelated to their tip producing duties for a significant period of time, and performed non-tip producing side work for more than 20% of their work time and/or for more than 30 consecutive minutes during their shifts.

68. Moreover, the Class Members were also subject to deductions and expenses that dropped their compensation below the minimum wage.

69. Plaintiff and the Class Members all labored under the same corporate structure, were required to follow the same corporate policies, had the same corporate chain of command, and were subject to the same rules in the company handbook.

70. Plaintiff and the Class Members also had the same job description, performed similar duties, used the same point of sale system, and were paid under the same pay system pursuant to company-wide policies.

71. The names and address of the Class Members of the are available from Defendants' records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

72. Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

73. As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former tipped employees who worked for Defendants for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

### VIOLATION OF THE FAIR LABOR STANDARDS

### FAILURE TO PAY THE MINIMUM WAGE

74. Plaintiff incorporates the preceding paragraphs by reference.

75. This count arises from Defendants' violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

76. Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendants.

77. Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

78. Defendants' failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the minimum wage rate.

79. Defendants' practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

80. Defendants' failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief that their conduct did not violate the FLSA.  To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA.  29 U.S.C. § 255(a).

## **WAGE DAMAGES SOUGHT**

81. Plaintiff and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

82. Plaintiff and the Class Members are entitled to reimbursement for all work related expenses they paid.

83. Plaintiff and the Class Members are entitled to liquidated damages and interest.

84. Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

85. Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

86. For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds including all expenses, and wages wrongfully withheld;

d.  An order requiring Defendants to correct their pay practices going forward;

e.  Reasonable attorney's fees, costs, and expenses of this action;

f.  Pre and post judgment interest; and

g. Such other and further relief to which Plaintiff and the Class Members may
be entitled, both in law and in equity.

Dated October 24, 2022

RESPECTFULLY SUBMITTED BY

By: */s/ Arnold J. Lizana*
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
Telephone: 404-207-1559
Facsimile: 470-231-0672

Don J. Foty
Texas Bar No. 24050022
(*pro hac vice motion forthcoming*)
4409 Montrose Blvd., Suite 200
Houston, Texas 77006
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@hftrialfirm.com

Anthony J. Lazzaro
Ohio Bar No. 0077962
(will apply for admission *pro hac vice*)
Alanna Klein Fischer
Ohio Bar No. 0090986
(will apply for admission *pro hac vice*)
Lori M. Griffin
Ohio Bar No. 0085241
(will apply for admission *pro hac vice*)
Matthew S. Grimsley
Ohio Bar No. 0092942

(will apply for admission *pro hac vice*)
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com
matthew@lazzarolawfirm.com

Attorneys for Plaintiff and the Putative Class