**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| **TROY WHITE, individually and on behalf of all others similarly situated,** | ) ) ) | |
| | ) | **CAUSE NO. 1:22-CV-04224-AT** |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **JURY TRIAL DEMANDED** |
| **HARD ROCK CAFÉ INTERNATIONAL (STP), INC.** | ) ) ) | |
| **Defendant.** | ) ) | |

**PLAINTIFF'S SECOND AMENDED[1]
COLLECTIVE ACTION COMPLAINT**

1.     The case implicates Defendant Hard Rock Café International (STP), Inc.'s ("Defendant") violations of the Fair Labor Standards Act's ("FLSA") tip credit requirements and the subsequent underpayment of their employees at the federally mandated minimum wage rate.  Plaintiff brings this case as a collective action under the FLSA, 29 U.S.C. 216(b).

**SUMMARY OF ACTION**

2.     Defendant pays its tipped employees, including servers and bartenders, below the minimum wage rate by taking advantage of the tip-credit provisions of the

---

[1] This Second Amended Complaint is being filed with the consent of Defendant pursuant to Rule 15(a)(2).

FLSA. Under the tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligation from the tips received from customers.

3.    However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m).  An employer must advise the employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id*. (stating that the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection.").  That is, the employer must inform the employee of the requirements under the FLSA, including: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; (4) that the worker must receive a minimum "tip credit" hourly rate for all hours worked, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

4.    Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as

management staff. *See Myers v. Copper Cellar Corp*., 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC,* No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014)("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc*., 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

5.      Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  *See* 29 U.S.C. § 203(m).

6.      Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to their tipped occupation.  *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir.

2017); *Osman v. Grube, Inc.,* No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.,* No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

7.    Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds 20 percent of the employees' work time or for a consecutive period of 30 minutes or more. *See, e.g., Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 880 (8th Cir. 2011) ("employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time."); *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482, at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Flood v. Carlson*

*Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying Defendants' motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

8.  Defendant violated the FLSA in the following respects:

    a.  **Violation for failure to inform:** Defendant failed to correctly inform Plaintiff of the desire to rely on the tip credit to meet its minimum wage obligations. In fact, Defendant failed to inform Plaintiff of the following: (1) the amount of the cash wage that is to be paid; (2) the amount by which the wages are increased on account of the tip credit; (3) that all tips received must be retained except for tips contributed to a valid tip pool; (4) that the hourly rate cannot drop below the minimum tipped wage rate, and (5) that the tip credit shall not apply to any employee who does not receive the notice.

    b.  **Violation for performing work unrelated to tipped occupation:** Plaintiff was required to perform improper types, and excessive

amounts, of non-tipped work, including, but not limited to sweeping floors, mopping floors, cleaning bathrooms, taking out trash, cleaning walls, and doing dishes.

c. **Violation for performing non-tipped side work in excess of 20% of the time spent working in the week or for a continuous period of time during a shift**: Plaintiff was required to spend greater than 20% of his time and/or more than 30 consecutive minutes performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, making tea and coffee, restocking ice, setting up fountain machines, rolling silverware, stocking paper products, and cleaning and stocking the serving line, amongst other duties.

9.      Therefore, Defendant did not pay Plaintiff and all similarly situated workers the applicable minimum wage in violation of 29 U.S.C. § 206.  As a result of these violations, Defendant has lost the ability to use the tip credit and therefore must compensate Plaintiff and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendant must account for the difference between the wages paid to Plaintiff and all similarly situated workers and the minimum wage rate.

## <u>SUBJECT MATTER JURISDICTION AND VENUE</u>

10.      This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et. seq*.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant operates in this District, employs tipped workers in this District, and many of the violations alleged in this Complaint occurred in this District.

## PARTIES AND PERSONAL JURISDICTION

12.     Plaintiff Troy White is an individual residing in Maryland.  His written consent to this action was previously filed with the Court.

13.     The Class Members are all current and former tipped employees who worked for Defendant for at least one week during the three year period prior to the filing of this action to the present.

14.     Defendant Hard Rock Café International (STP), Inc. is a foreign corporation doing business in Georgia.  Said Defendant has been served and has made an appearance in this case.

15.     Defendant Hard Rock Café International (STP), Inc. is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privilege of conducting activities in Georgia and established minimum contacts sufficient to confer jurisdiction. Defendant Hard Rock Café International (STP), Inc. does business in Georgia, employs residents of Georgia, advertises in Georgia, and markets to Georgia customers.  Defendant Hard Rock Café International (STP), Inc. also has had and continues to have continuous and systematic contacts with Georgia

sufficient to establish general jurisdiction over it. Therefore, the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

## COVERAGE

16.    At all material times, Defendant has been an employer within the meaning of the FLSA. 29 U.S.C. § 203(d).

17.    At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

18.    At all material times, Defendant has enjoyed yearly gross revenue in excess of $500,000.

19.    At all material times, Plaintiff was an employee engaged in the commerce or the production of goods for commerce.

## FACTS

20.    Defendant operates a nationwide chain of restaurants and casinos under the trade name "Hard Rock Cafe" throughout the U.S. Specifically, Defendant operates in Colorado, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, New

Jersey, New York, Ohio, Pennsylvania, Tennessee, Texas and other states. (*See* https://www.hardrockcafe.com/locations.aspx/, last visited 10/24/2022).

21.    Hard Rock Cafe restaurants are full-service restaurants that employ servers and bartenders to provide services to customers.

22.    A server gathers orders from customers and delivers food and drinks to the customers. A server is paid an hourly wage by Defendant and receives tips from customers. A bartender prepares and serves drinks to customers. A bartender is paid an hourly wage by Defendant and receives tips from customers.

23.    However, Defendant paid these tipped workers less than the minimum wage.

24.    Defendant attempted to utilize the tip credit to meet their minimum wage obligation to their tipped workers, including the Plaintiff and Class Members.

25.    Plaintiff worked for Defendant in Washington, D.C. He worked as a server and was paid less than the federal minimum wage. His hourly rate was approximately $5.35 per hour. Plaintiff worked for Defendant during the past three years. He worked from approximately June 2015 to March 2021.

26.    The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants

advising of the ills of using the tip credit. (*See* https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited October 24, 2022). The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work. As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color.** The subminimum wage for tipped workers has risen little since it was enacted following the emancipation of slavery, a time when employer trade associations pushed to recoup the costs of free, exploited labor.

(*Id*.) (emphasis in original)

27.     Given the harmful effects of the tip credit, there are strict requirements that must be met by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

28.     In this case, Defendant did not satisfy the strict requirements to use the tip credit. Defendant maintained a policy and practice whereby it failed to provide the Plaintiff and the Class Members with the statutorily required notice regarding (1) the amount of the cash wage that is to be paid, (2) the amount by which the wages are increased on account of the tip credit, (3) that all tips received by the employee

must be retained by the employee except for tips contributed to a valid tip pool, (4) that the hourly wage paid to the Plaintiff and Class Members cannot be lower than the minimum tipped wage, (5) that they cannot pay for any work related expenses, and (6) that the tip credit shall not apply to any employee who does not receive the notice, amongst other violations.

29.    In particular, Defendant did not provide Plaintiff with an explanation of the amount of cash wage that he was to be paid prior to starting his employment. Defendant did not provide any written or oral notice at all regarding the tip credit prior to Plaintiff starting his employment.  No posters with language approved by the Department of Labor were displayed or were prominent.  Further, Plaintiff was paid below the minimum wage by Defendant.  However, Plaintiff was not provided any oral or written explanation regarding the specific amount of the tip credit that Defendant claimed or the amount by which his wages were to be increased on account of the tip credit before he began his employment.  Plaintiff was not told in writing or orally that all tips he received must be retained by him.  Plaintiff was also not explained in writing or orally that the hourly wage paid to him cannot be lower than $2.13 per hour.  Further, no explanation was given to him by Defendant that it was not eligible to claim the tip credit unless it provided the notice required by the FLSA.  The same facts exist with respect to the Class Members.

30.    Defendant also maintained a policy and practice whereby tipped employees were required to perform non-tip producing side work unrelated to the employees' tipped occupation. As a result, Plaintiff and the Class Members were engaged in dual occupations while being compensated at the tip credit rate. While performing these non-tip generating duties, they did not interact with customers and could not earn tips.

31.    These duties include but are not limited to the following: sweeping floors, mopping floors, cleaning bathrooms, taking out trash, cleaning walls, and doing dishes, amongst other activities that were not related to a tipped occupation. Plaintiff was required to perform these duties on a weekly basis. These duties are unrelated to the work of a server or bartender and should have been performed by employees who were paid at least the federal minimum wage. Plaintiff spent approximately 30 minutes to one hour each shift performing these unrelated duties. Defendant as not allowed to pay Plaintiff less than the federal minimum wage when he performed these duties. However, that is exactly what Defendant did. The same facts exist for the Class Members.

32.    Defendant also maintained a policy and practice whereby tipped employees were required to spend a substantial amount of time, in excess of 20

percent and/or for consecutive periods of time of more than 30 minutes, performing non-tip producing side work related to the employees' tipped occupation.

33.     Specifically, Defendant maintained a policy and practice whereby tipped employees, were required to spend a substantial amount of time performing non-tip producing side work, including, but not limited to setting up tables, cleaning tables, refilling condiments, making tea and coffee, restocking ice, setting up fountain machines, rolling silverware, stocking paper products, and cleaning and stocking the serving line, amongst other non-tip producing duties.

34.     Further, Defendant required Plaintiff and the Class Members to perform non-tip producing work prior to the opening of the restaurant, in the middle of their shifts, and after the restaurants closed.  Indeed, Defendant required the Plaintiff and the Class Members to arrive prior to the restaurants opening for business when there were no customers and no opportunity to earn tips, to perform manual labor cleaning and setup duties.  Likewise, Defendant required the Plaintiff and Class Members to remain at the restaurants after they had closed for business and when there was no opportunity to earn tips, to perform manual labor cleaning duties.  At times, they spent 31 minutes to two hours performing non-tip producing work before the restaurant was open, in the middle of their shifts, and after the restaurant was closed.

35.     Plaintiff was required to work both the closing shift and opening shift. When Plaintiff worked the opening shift, Plaintiff was required to arrive between 8:30 am and 9 am.  However, the restaurant opened at 10 am.  Therefore, Plaintiff spent approximately one hour to one hour and a half performing set up work, cleaning work, and prep work when the restaurant was closed, did not have customers, and there was no opportunity to earn tips.  Plaintiff was paid at the rate of $2.13 for this time.  Similar facts exist for the Class Members.

36.     Moreover, when Plaintiff worked the closing shift, he regularly worked well past the closing of the restaurant performing cleaning duties.  On Fridays and Saturdays, the restaurant closed at 12 am.  However, Plaintiff routinely performed cleaning duties until 2 am to 4 am. Therefore, Plaintiff spent approximately two to four hours performing side work and cleaning work when the restaurant was closed, did not have customers, and there was no opportunity to earn tips.   Similar facts exist for the Class Members.

37.     Furthermore, Defendant would host numerous private events.  For these private events, tipped employees were required to arrive at Defendant's restaurants up to two hours before the event started to perform set up work.  This work included decorating and setting up private rooms, ensuring that the menus were correct, and

setting up tables.     Additionally, tipped employees were required to spend approximately two to three after the events concluded to clean the private rooms.

38.     On shifts where a private party was required, tipped employees would spend approximately two hours before the event started to set up the private room. No tips could be earned at that time because the event had not started.  The typical private party lasted from two to four hours.  After the private party was over, tipped employees normally spent two to three hours cleaning the room.  No tips could be earned at that time because the event was over.  Therefore, in an approximately eight hour shift, these employees would spent 50% or more of his time performing non-tip generating side work, prep work, and cleaning work.

39.     However, Defendant did not pay their tipped employees the full minimum wage rate for this work.

40.     Defendant required Plaintiff to spend more than 20% of his time working each week performing non-tip generating side work, cleaning work, and prep work. Indeed, during each eight hour shift that Plaintiff worked, Plaintiff routinely spent at least two hours performing non-tip generating side work and prep work in addition to the time spent performing cleaning duties that were unrelated to his work as a server and bartender.  Similar facts exist for the Class Members.

41.    During Plaintiff's and the Class Members' employment, checklists were posted in Defendant's restaurants with numerous non-tipped duties that tipped employees were required to perform, in addition to serving customers.

42.    When the tipped employees performed these non-tipped duties, they usually did not interact with customers and did not have an opportunity to earn tips.

43.    Indeed, Defendant did not have a policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

44.    Defendant did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendant was capable of doing so.  Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff or the Class Members.

45.    Defendant uses a point-of-sale system to record hours worked by their tipped employees.  Defendant then analyzes the information collected by this system, including the labor costs at each of the restaurants. Defendant's timekeeping system was capable of tracking multiple job codes for different work assignments, but Defendant failed to track the specific tasks for Plaintiff and the Class Members.

46.     In the point-of-sale system, Defendant can create different "clock in" codes that would allow tipped employees to record their time at the full minimum wage when performing non-tipped work.

47.     However, Defendant did not allow its tipped employees to clock-in at the full minimum wage rate when performing the non-tipped work described in this Complaint.

48.     Moreover, Defendant's point-of-sale system is able to identify when Plaintiff and the Class Members had customers and when they did not.  This information can identify those periods of time when Plaintiff and the Class Members worked without customers and without the opportunity to earn tips.  Therefore, Defendant's data, once it is produced in this case, will be used to demonstrate the particular instances when each Plaintiff and Class Member spent more than 20% of their time working performing non-tipped work, the percentage of time in excess of 20%, and when they spent more than 30 minutes performing non-tipped work.

49.     Additionally, Defendant's managers at the restaurants were eligible to receive bonuses, in part, based on meeting or exceeding certain labor cost targets, which created an incentive to keep the amount paid to tipped employees low. Therefore, there was financial incentive for Defendant's managers to require the

Plaintiff and Class Members to perform non-tip generating work while being paid below the minimum wage.

50.    Because Defendant violated the requirements to claim the tip credit, Defendant lost the right to take a credit toward their minimum wage obligation to Plaintiff and the Class Members.

51.    As such, Plaintiff and the Class Members were not compensated at the federally mandated minimum wage.

52.    Defendant knew or should have known that its policies and practices violate the law, and Defendant has not made a good faith effort to comply with the law. Rather, Defendant acted knowingly, willfully, and/or with reckless disregard of the law carried and continue to carry out the illegal pattern and practice regarding their tipped employees as described in this Complaint. Defendant's method of paying Plaintiff and the Class Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## **DUAL JOBS REGULATION**

53.    On November 8, 2018, the Department of Labor issued opinion letter FLSA2018-27 which provided a new standard for interpreting the dual jobs regulation that was different than the "80/20" rule and prior Department of Labor opinion letters and guidance that had existed for the past approximately 30 years.

However, nearly every court to have considered this opinion letter held that the opinion letter was not entitled to any deference given the sudden an unexpected change by the Department of Labor. *See, e.g., Callaway v. DenOne, LLC*, No. Civ. A. 1:18-cv-1981, 2019 WL 1090346 (N.D. Ohio Mar. 8, 2019); *Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019). *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 552-53 (W.D. Va. 2019); *Flores v. HMS Host Corp.*, No. 8:18-cv-03312-PX, 2019 U.S. Dist. LEXIS 183906 (D. Md. Oct. 23, 2019).

54.     Therefore, the Department of Labor announced its intention to revise the dual jobs regulation found in 29 C.F.R. § 531.56(e) and issued a notice of proposed rule-making on October 8, 2019. (*See* https://www.federalregister.gov/documents/2019/10/08/2019-20868/tip-regulations-under-the-fair-labor-standards-act-flsa).

55.     After soliciting comments, the Department of Labor published its final rule on December 30, 2020, which had an effective date of March 1, 2021. (https://www.federalregister.gov/documents/2020/12/30/2020-28555/tip-regulations-under-the-fair-labor-standards-act-flsa).

56.     After delaying the effective date of the Final Rule. (https://www.dol.gov/agencies/whd/flsa/tips), on June 21, 2021, the Department of Labor announced "a notice of proposed rulemaking to limit the amount of non-tip

producing work that a tipped employee can perform when an employer is taking a tip credit." (https://www.federalregister.gov/documents/2021/06/23/2021-13262/tip-regulations-under-the-fair-labor-standards-act-flsa-partial-withdrawal).

57.    After soliciting more comments, the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule). (https://www.dol.gov/agencies/whd/flsa/tips).

58.    Under the Final Rule, an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes. That is, when a tipped worker performs non-tipped work for a continuous period of time exceeding 30 minutes, the employer cannot claim the tip credit.  This regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time.

59.    Here, Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time.  That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, after they were closed, and before/after private events, when the restaurants did not have customers and there was no opportunity to earn tips.  During this time,

Defendant paid below the minimum wage rate and forced the Plaintiff and Class Members to perform non-tip producing duties, as noted above.

60.    Given that Defendant failed to comply with the requirements to take the tip credit, Defendant has lost the ability to claim the tip credit and owe Plaintiff and the Class Members pay at the full minimum wage rate per hour for all hours they worked for Defendant.

## COLLECTIVE ACTION ALLEGATIONS

61.    Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendant as a tipped worker for at least one week during the three-year period prior to the commencement of this action to the present.

62.    Plaintiff has actual knowledge, through conversations with his co-workers that a collective of similarly situated workers exists who have been subjected to the same policies of Defendant with respect to the payment of the minimum wage.

63.    The Class Members are similarly situated to Plaintiff in that they share the same duties and were subject to the same violations of the FLSA.

64.    Like Plaintiff, the Class Members were not given proper notice of the tip credit provisions, performed substantial work that was unrelated to their tip

producing duties for a significant period of time, and performed non-tip producing side work for more than 20% of their work time and/or for more than 30 consecutive minutes during their shifts.

65.    Plaintiff and the Class Members all labored under the same corporate structure, were required to follow the same corporate policies, had the same corporate chain of command, and were subject to the same rules in the company handbook.

66.    Plaintiff and the Class Members also had the same job description, performed similar duties, used the same point of sale system, and were paid under the same pay system pursuant to company-wide policies.

67.    The names and address of the Class Members of the are available from Defendant's records.  To the extent required by law, notice will be provided to these individuals by first class mail, email, text message, or by the use of techniques and a form of notice similar to those customarily used in representative actions.

68.    Although the exact amount of damages may vary among the Class Members in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

69.    As such, the class of similarly situated Class Members is properly defined as follows:

**All current and former tipped employees who worked for Defendant for at least one week during the three-year period prior to the filing of this action to the present.**

## CAUSE OF ACTION

VIOLATION OF THE FAIR LABOR STANDARDS

FAILURE TO PAY THE MINIMUM WAGE

70.    Plaintiff incorporates the preceding paragraphs by reference.

71.    This count arises from Defendant's violation of the FLSA in connection with their failure to pay the minimum wages. *See* 29 U.S.C. § 206.

72.    Plaintiff and the Class Members were paid hourly rates less than the minimum wage while working for Defendant.

73.    Plaintiff and the Class Members were not exempt from the minimum wage requirements of the FLSA.

74.    Defendant's failure to comply with the minimum wage requirements of the FLSA, and, in particular, the tip credit requirements, resulted in Plaintiff and the Class Members being paid less than the minimum wage rate.

75.    Defendant's practice of failing to inform its employees of its intent to rely on the tip credit to meets its minimum wage obligations violates the FLSA.

76.    Defendant's failure to pay the minimum wage to Plaintiff and the Class Members, in violation of the FLSA was willful and not based on a good faith belief

that their conduct did not violate the FLSA.  To foregoing conduct, as alleged, constitutes a willful violation within the meaning of the FLSA.  29 U.S.C. § 255(a).

## WAGE DAMAGES SOUGHT

77.    Plaintiff and the Class Members are entitled to receive the difference between the minimum wage and the tip credit adjusted minimum wage for each hour they worked.

78.    Plaintiff and the Class Members are entitled to liquidated damages and interest.

79.    Plaintiff and the Class Members are also entitled to recover their attorney's fees and costs.

## JURY DEMAND

80.    Pursuant to his rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

## PRAYER FOR RELIEF

81.    For these reasons, Plaintiff respectfully requests that judgment be entered in his favor awarding him and the Class Members:

a.  Minimum wage compensation unadulterated by the tip credit;

b.  Liquidated damages;

c.  All misappropriated funds and wages wrongfully withheld;

d.  An order requiring Defendant to correct its pay practices going forward;

e.  Reasonable attorney's fees, costs, and expenses of this action;

f.  Pre and post judgment interest; and

g.  Such other and further relief to which Plaintiff and the Class Members may

be entitled, both in law and in equity.

Dated April 27, 2023

RESPECTFULLY SUBMITTED BY

By: */s/ Don J. Foty*
Don J. Foty
Texas Bar No. 24050022
(*pro hac vice*)
2 Greenway Plaza, Suite 250
Houston, Texas 77046
Telephone:  713-523-0001
Facsimile:  713-523-1116
dfoty@hftrialfirm.com

By: */s/ Arnold J. Lizana*
Law Offices of Arnold J. Lizana III
GA Bar No.: 698758
1175 Peachtree Street NE, 10th Floor
Atlanta, GA 30361
Telephone: 877-443-0999
Facsimile: 877-443-0999

Anthony J. Lazzaro
Ohio Bar No. 0077962
(*pro hac vice*)
Alanna Klein Fischer
Ohio Bar No. 0090986

(*pro hac vice*)
Lori M. Griffin
Ohio Bar No. 0085241
(*pro hac vice*)
Matthew S. Grimsley
Ohio Bar No. 0092942
(*pro hac vice*)
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
anthony@lazzarolawfirm.com
alanna@lazzarolawfirm.com
lori@lazzarolawfirm.com
matthew@lazzarolawfirm.com

Attorneys for Plaintiff and the Putative Class

## CERTIFICATE OF SERVICE

I certify that on this April 27, 2023, a true and correct copy of the foregoing instrument was filed through the Court's electronic case filing which will serve a copy of this document electronically on all counsel of record.

/s/ Don J. Foty
Don J. Foty