## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TROY WHITE, individually and on )
behalf of all others similarly situated, )
                             )
          Plaintiff, )
                             )
        v. )    Civ. Act. No. 1:22-cv-4224-AT
                             )
HARD ROCK CAFE )
INTERNATIONAL (STP), INC., )
                             )
          Defendant. )
                             )

## **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*/s/ F. Beau Howard*
F. Beau Howard
Ga. Bar No. 142641
Eileen Oakes Muskett, *Pro Hac Vice*
Colin Dougherty*, Pro Hac Vice*
Adam Busler, *Pro Hac Vice*
Lauren A. Wright*, Pro Hac Vice*
Fox Rothschild LLP
999 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia 30309
(404) 870-3763
fbhoward@foxrothschild.com
emuskett@foxrothschild.com
cdougherty@foxrothschild.com
abusler@foxrothschild.com
laurenwright@foxrothschild.com

*Attorneys for Defendant Hard Rock
Cafe International (STP), Inc.*

# **TABLE OF CONTENTS**

**Page**

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**...........1

**I.**    **INTRODUCTION** .................................................................................1

**II.**    **BACKGROUND** .................................................................................2

**III.**    **ARGUMENT & CITATION TO AUTHORITY** ........................................5

    A.    Legal Standard.................................................................................5

    B.    The Fifth Circuit Vacated the "Final Rule" Pursuant to 5 U.S.C. § 706(2)(A)................................................................................6

    C.    The Final Rule Has Been Vacated Throughout the Country, Thereby Reviving the Original Dual Jobs Regulation Which Did NOT Contain the 80/20 Rule or the 30 Continuous Minutes Rule .............13

    D.    This Court Should NOT Follow the Eleventh Circuit's Decision in *Rafferty v. Denny's, Inc*. to Graft an 80/20 Rule onto the Dual Jobs Regulation .........................................................................15

**IV.**    **CONCLUSION** .................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action on Smoking & Health v. C.A.B.*,
  713 F.2d 795 (D.C. Cir. 1983) ......................................................................14, 15

*Ali v. Barr*,
  951 F.3d 275 (5th Cir. 2020) ...............................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................6

*United States ex rel. Bibby v. Wells Fargo Bank, N.A.*,
  165 F. Supp. 3d 1340 (N.D. Ga. 2015).................................................................6

*Chamber of Com. of United States of Am. v. United States Dep't of
  Lab.*,
  885 F.3d 360 (5th Cir. 2018) ...............................................................................15

*Chevron U.S.A., Inc. v. NRDC*,
  467 U.S. 837 (1984)........................................................................................11, 16

*Duke v. Cleland*,
  5 F.3d 1399 (11th Cir. 1993) .................................................................................6

*Gutierrez-Brizuela v. Lynch*,
  834 F.3d 1142 (10th Cir. 2016) ...........................................................................11

*H & H Tire Co. v. U. S. Dep't of Transp.*,
  471 F.2d 350 (7th Cir. 1972) ...............................................................................15

*Harmon v. Thornburgh*,
  878 F.2d 484 (D.C. Cir. 1989)..............................................................................15

*Hawthorne v. Mac Adjustment, Inc.*,
  140 F.3d 1367 (11th Cir. 1998) .............................................................................6

*Huawei Techs. USA, Inc. v. FCC*,
  2 F.4th 421 (5th Cir. 2021) ..................................................................................11

*Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*,
  118 F.3d 1467 (11th Cir. 1997) ......................................................... 15

*Loper Bright Enterprises v. Raimondo*,
  144 S. Ct. 2244 (2024) ............................................................. *passim*

*Mason Gen. Hosp. v. Sec'y of Dep't of Health & Hum. Servs.*,
  809 F.2d 1220 (6th Cir. 1987) ......................................................... 15

*Menorah Med. Ctr. v. Heckler*,
  768 F.2d 292 (8th Cir. 1985) ............................................................ 15

*Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*,
  60 F.4th 956 (5th Cir. 2023) ........................................................... 11

*Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc.*,
  173 F. Supp. 3d 1324 (N.D. Ga. 2016), aff'd, 708 F. App'x 684
  (Fed. Cir. 2018) ........................................................................... 6

*N. Carolina Growers' Ass'n, Inc. v. United Farm Workers*,
  702 F.3d 755 (4th Cir. 2012) ........................................................... 15

*National Cable Telecom. Assn. v. Brand X Internet S*,
  545 U.S. 967, 125 S. Ct. 2688 (2005) ............................................... 17

*Paulsen v. Daniels*,
  413 F.3d 999 (9th Cir. 2005) ........................................................... 15

*Prometheus Radio Project v. F.C.C.*,
  652 F.3d 431 (3d Cir. 2011) ............................................................ 15

*Rafferty v. Denny's, Inc.*,
  13 F.4th 1166 (2021) ............................................................... *passim*

*Rest. L. Ctr. v. United States Dep't of Lab.*,
  No. 23-50562, 2024 WL 3911308 (5th Cir. Aug. 23, 2024) .................. *passim*

*Stewart v. Oneal*,
  237 F. 897 (6th Cir. 1916) .............................................................. 14

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ..................................................................... 11

**Statutes**

5 U.S.C. § 706(2)(A) ..................................................................6, 13, 15

29 U.S.C. § 203(m) ..............................................................................8

29 U.S.C. § 203(m)(2) ..........................................................................8

29 U.S.C. § 203(t) ...........................................................................8, 9

**Other Authorities**

29 C.F.R. § 531.50(a) ..........................................................................8

29 C.F.R. § 531.56 ..............................................................................7

29 C.F.R. § 531.56(e) ...................................................................*passim*

29 C.F.R. § 531.56(f) ...................................................................*passim*

29 C.F.R. § 531.56(f)(3)(i) ..................................................................12

85 Fed. Reg. 86,756, 86,767 .................................................................9

86 Fed. Reg. 60,114, 60,116 .................................................................9

86 Fed. Reg. 60,114, 60,117 .................................................................9

86 Fed. Reg. 60,114, 60,130 ................................................................12

91 C.J.S. Vacate (1955) ......................................................................14

5 Charles Alan Wright & Arthur R. Miller, Federal Practice &
    Procedure § 1216 (3d ed. 2002) .......................................................6

Fed. R. Civ. P. 12(b)(6) .......................................................................6

Fed. R. Civ. P. 12(c) ....................................................................1, 5, 6

Jonathan F. Mitchell, THE WRIT-OF-ERASURE FALLACY, 104 Va. L.
    Rev. 93 (2018) ............................................................................14

Mila Sohoni, THE POWER TO VACATE A RULE, 88 Geo. Wash. L. Rev.
    1121 (2020) ...............................................................................14

Ronald M. Levin, VACATUR, NATIONWIDE INJUNCTIONS, AND THE
    EVOLVING APA, 98 Notre Dame L. Rev. 1997 (2023) ................................13, 14

<u>**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**</u>

Defendant Hard Rock Cafe International (STP), Inc. ("**Defendant**" or "**Hard Rock Cafe**"), through undersigned counsel, respectfully asks this Honorable Court, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to grant judgment on the pleadings as follows:

## I.    <u>INTRODUCTION</u>

Plaintiffs' Second Amended Complaint alleges that Hard Rock Cafe underpaid its bartenders and servers because Hard Rock Cafe (a) paid them the "minimum tipped wage rate," but (b) required them to spend too much of their time performing "non-tipped duties." (2d Am. Compl. ¶¶ 24, 30-36, 40 [Doc. 48].) To support this claim, Plaintiff relies upon certain "rules" set forth in a new FLSA regulation, 29 C.F.R. § 531.56(e) and (f) (the "**Final Rule**"), which became effective on December 28, 2021, and remained in place until August 23, 2024. (2d Am. Compl. ¶¶ 8(b), 8(c), 31-32, 53, and 58-64.) The specific aspects of the Final Rule that Plaintiff alleges were violated are known generally as the "80/20 rule" and the "30 continuous minutes rule." (*Id.*) Based upon these alleged violations, Plaintiff claims that Hard Rock Cafe was not entitled to take the "tip credit" permitted for "tipped employees" under the FLSA and was instead required to pay each of its servers and bartenders the full minimum wage. (2d Am. Compl. ¶¶ 9, 60.)

Judgment on the pleadings must be granted because, on August 23, 2024, the Final Rule was vacated as an unlawful, arbitrary, and capricious abuse of the USDOL's rulemaking power under the FLSA. *See Rest. L. Ctr. v. United States Dep't of Lab.*, No. 23-50562, 2024 WL 3911308, at *11 (5th Cir. Aug. 23, 2024). Without the Final Rule, there is no "80/20 rule" or "30 continuous minutes rule" to support the allegations of the complaint. Since Plaintiff bases his claims upon the now-vacated Final Rule, he has failed to state a claim as a matter of law, and judgment on the pleadings is required.

Granting this motion would leave a narrow dispute concerning whether Defendant gave appropriate tip credit notices to its bartenders and servers. This will significantly streamline discovery. Defendant has already produced many of the relevant written notices and is working to produce the remainder for the most recent opt-in plaintiffs. Accordingly, Defendant also requests a stay of discovery pending resolution of this purely legal issue concerning the viability of Plaintiff's claims.

## II.    <u>BACKGROUND</u>

On October 24, 2022, Terry Carpenter filed suit as the sole named Plaintiff alleging Defendant violated the FLSA by improperly applying the FLSA's tip credit provisions to its servers and bartenders. (Complaint [Docs. 1, 4].) The Second Amended Complaint, filed April 27, 2023, named Troy White as the lead Plaintiff, after it was determined that Carpenter (and several purported opt-in Plaintiffs) had

not worked for Hard Rock Cafe during the statute of limitations period and withdrew from the case. (2d Am. Compl.) Defendant filed an Answer to the Second Amended Complaint on May 11, 2023 (Ans. to 2d Am. Compl. [Doc. 52]), denying all legal arguments asserted by Plaintiff.

Plaintiff's Motions for Conditional Certification and Approval of Notice and Notice Plan were filed June 30, 2023. [Docs. 55, 56.] Defendant opposed these motions. [Docs. 69, 70.] On March 27, 2024, the Court granted Plaintiff's Motion for Conditional Class Certification[1], and granted in part his motion for approval of a notice plan and class discovery. [Doc. 88.] The Court defined the collective as:

> All persons who worked for Defendant as servers or bartenders for at least one week between March 27, 2021 and March 27, 2024 and were paid less than the federal minimum wage of $7.25 per hour.

[Doc. 88, p. 23.]

After additional briefing and conference with the Court, Notice was issued on June 3, 2024, to the potential collective action members *via* mail, email, text message, and physical posting at all applicable Hard Rock Cafe locations from June

---

[1] Although the word "class" was used, the Court made it clear that this is a collective action and not class action since Plaintiff had only moved for collective certification under the FLSA. [Doc. 88, FN 1]

- 3 -

3, 2024, through August 3, 2024. To date, 685 plaintiffs have opted into this collective action.[2]

In its decision granting conditional certification, this Court described Plaintiff's single FLSA count as comprising four distinct FLSA claims, including: (1) Hard Rock Cafe's alleged failure to notify tipped employees of its intent to rely upon a tip credit; (2) Hard Rock Cafe allegedly required tipped employees to perform work unrelated to their tipped occupation; (3) Hard Rock Cafe allegedly required tipped employees to perform "non-tipped side work" in excess of 20 percent of their working time; and (4) Hard Rock Cafe allegedly required employees to perform non-tip producing work for periods in excess of 30 minutes. [Doc. 88, PP. 10-11.]

Plaintiff's Second Amended Complaint specifically ties these claims to the Final Rule by alleging that "the Department of Labor announced on October 28, 2021, the publication of a final rule (Tips Dual Jobs final rule)." (2d Am. Compl. ¶ 57.) Under the Final Rule, Plaintiff claims that "an employer cannot take a tip credit for any of the time spent by a tipped worker performing any non-tipped work that exceeds 30 minutes." (2d Am. Compl. ¶ 58.) Further, Plaintiff alleges that "[t]his

---

[2] Eight Opt-in Plaintiffs have since withdrawn, and an initial review of remaining opt-in forms and relevant data demonstrates that a significant number of the current opt-ins do not meet the definition set by the Court.

regulation provides additional guidance relating to the existing rule that a worker cannot perform non-tip generating work for excessive periods of time." (*Id.*)

Plaintiff continues:

Defendant illegally required Plaintiff and the Class Members to perform non-tip producing work for an excessive period of time. That is because Defendant required Plaintiff and the Class Members to perform non-tipped work 31 minutes to two hours before the restaurants were open for business, throughout their shifts, after they were closed, and before/after private events, when the restaurants did not have customers and there was no opportunity to earn tips.

(2d Am. Compl. ¶ 59.)

Plaintiff's allegations that Defendant violated the Final Rule comprise most of this lawsuit.

However, on Friday, August 23, 2024, the Fifth Circuit Court of Appeals vacated the DOL's Final Rule. *See Rest. L. Ctr. v. United States Dep't of Lab.*, No. 23-50562, 2024 WL 3911308, at *11 (5th Cir. Aug. 23, 2024) (holding, "[w]e RENDER summary judgment for the Associations and VACATE the Final Rule").

## III.   ARGUMENT & CITATION TO AUTHORITY

### A.   Legal Standard

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the

pleadings and any judicially noticed facts." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1340, 1344 (N.D. Ga. 2015) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) (citing FED. R. CIV. P. 12(c))).

"The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6)." Federal Rule 12(b)(6) allows a Court to "dismiss a pleading for 'failure to state a claim upon which relief can be granted.'" *Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1327 (N.D. Ga. 2016) (citing FED. R. CIV. P. 12(b)(6)), *aff'd*, 708 F. App'x 684 (Fed. Cir. 2018). "A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory." *Mobile Telecommunications Techs., LLC*, 173 F. Supp. 3d at 1327 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002), and *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)). "In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true." *Mobile Telecommunications Techs., LLC*, 173 F. Supp. 3d at 1327-28 (citing *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993)).

## B.    The Fifth Circuit Vacated the "Final Rule" Pursuant to 5 U.S.C. § 706(2)(A)

As initially promulgated in September 1967, the Dual Jobs regulation stated:

> (e) Dual jobs. In some situations an employee is employed in a dual
> job, as for example, where a maintenance man in a hotel also serves as
> a waiter. In such a situation the employee, if he customarily and
> regularly receives at least $20 a month in tips for his work as a waiter,
> is a tipped employee only with respect to his employment as a waiter.
> He is employed in two occupations, and no tip credit can be taken for
> his hours of employment in his occupation of maintenance man. Such
> a situation is distinguishable from that of a waitress who spends part of
> her time cleaning and setting tables, toasting bread, making coffee and
> occasionally washing dishes or glasses. It is likewise distinguishable
> from the counterman who also prepares his own short orders or who, as
> part of a group of countermen, takes a turn as a short order cook for the
> group. Such related duties in an occupation that is a tipped occupation
> need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (effective Sept. 28, 1967 to May 5, 2011).

The only change to this regulation from 1967 through December 27, 2021, was a revision from "$20 a month in tips" to "$30 a month in tips," which became effective on May 5, 2011. Thereafter, § 531.56 underwent revisions on June 29, 2012, and again on April 30, 2021, but there were no revisions to the "Dual Jobs" section located at § 531.56(e).

The Final Rule, which serves as the foundation for Plaintiff's Second Amended Complaint, constituted the first major revision to the Dual Jobs regulation since its initial promulgation in September of 1967. As amended, the Final Rule stated:

> (e) Dual jobs. In some situations an employee is employed in dual jobs,
> as, for example, where a maintenance person in a hotel also works as a
> server. In such a situation if the employee customarily and regularly
> receives at least $30 a month in tips for the employee's work as a server,
> the employee is engaged in a tipped occupation only when employed

- 7 -

> as a server. The employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person.

29 C.F.R. § 531.56(e) (effective Dec. 28, 2021, to Aug. 23, 2024).

Notably, the revised version of the Dual Jobs regulation removed every reference to a "tipped employee" or to "tipped employees." *Id.* This is significant. FLSA Section 203(t) defines a "tipped employee" to mean "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Similarly, the tip credit section of the FLSA (found in Section 203(m)(2)) explains that an employer may pay a "tipped employee" a cash wage of $2.13/hour provided the employee earns enough in tips to average at least the current federal minimum wage, *i.e.*, $7.25/hour.[3] 29 U.S.C. § 203(m)(2).

By removing references to "tipped employees," the Final Rule no longer assisted in determining when an employee is a "tipped employee" under Section 203(m) and (t) of the FLSA. Instead, an entirely new concept was substituted, *i.e.*, whether the employee was "engaged in a tipped occupation." *Id.* The revised regulation also removed the clarifying language indicating that a waitress who "spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" would remain a "tipped employee" and

---

[3] The tipped wage rate of $2.13/hour is explained in 29 C.F.R. § 531.50(a).

would **not** be engaged in dual jobs, unlike, for example, a hotel maintenance worker who also worked as a server. *Id.*

To further expand upon the DOL's new "engaged in a tipped occupation" language, the Final Rule added a new, lengthy subsection (f), which includes all of the "rules" (*e.g.*, the 80/20[4] and 30-minute rules) that form the basis of Plaintiff's

---

[4] The Fifth Circuit succinctly explained the history of the "80/20 rule" prior to its promulgation as part of the Final Rule in December of 2021 as follows:

> DOL issued several opinion letters from 1979 to 1985 interpreting the dual-jobs regulation to more significantly restrict the tip credit's availability. In 1988, DOL published its so-called 80/20 guidance in its sub-regulatory Field Operations Handbook. 86 Fed. Reg. 60,114, 60,116.

> The 80/20 guidance provided that a maximum of 20 percent of an employee's time could be spent on non-tipped activities related to the tipped occupation—for example, a waitress setting tables or making coffee—for the employer to claim the full tip credit. DOL's 80/20 guidance persisted uninterrupted until 2009, when DOL's interpretation of the dual-jobs regulation began to oscillate with every change in presidential administration. First, in early 2009, a DOL opinion letter briefly rescinded the guidance. This opinion letter, in turn, was quickly withdrawn in the early days of the Obama Administration. See 86 Fed. Reg. 60,114, 60,117. Then, in 2018, the Trump Administration reissued the 2009 opinion letter, thereby doing away with the 80/20 guidance once again. And in 2020, DOL issued a final rule set to take effect in March 2021 that would have amended 29 C.F.R. § 531.56(e). This rule would have permitted employers to claim the tip credit for all non-tipped duties that its tipped employees performed, so long as those duties were related to the employee's tipped occupation and were performed reasonably contemporaneously with tipped duties. 85 Fed. Reg. 86,756, 86,767. But the rule never took effect.

> Instead, another change in presidential administration swept in another change in DOL policy. In December 2021, DOL issued a different final rule

Second Amended Complaint. To avoid block quoting a multi-page regulation, Defendant has attached the full regulation as Appendix 1 to this brief. *See* 29 C.F.R. § 531.56(f) (effective December 28, 2021 until it was vacated on August 23, 2024).

As noted above, Plaintiff's Second Amended Complaint relies specifically upon the 80/20 rule, 30-minute rule, and unrelated work concepts described in the Final Rule to support the alleged violations of the FLSA in this case. (2d Am. Compl. ¶¶ 53-60.)

However, on Friday, August 23, 2024, the Fifth Circuit vacated the Final Rule. *Rest. L. Ctr.*, 2024 WL 3911308, at *11 (holding, "[w]e RENDER summary judgment for the Associations and VACATE the Final Rule").

The Fifth Circuit also acknowledged the analytical landscape had recently changed given the Supreme Court of the United States' opinion in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), stating:

> In conducting review of an agency's action under the APA, the "court shall decide all relevant questions of law" and "interpret . . . statutory provisions." *Id*. § 706. "The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Loper Bright*, 144 S. Ct. at 2261.

---

after notice and comment that effectively codified its longstanding 80/20 guidance.

*Rest. L. Ctr. v. United States Dep't of Lab.*, No. 23-50562, 2024 WL 3911308, at *1-2 (5th Cir. Aug. 23, 2024).

Our task was once different under the now-ancient régime that *Chevron* imposed. Under *Chevron*, a court reviewing agency action for compliance with the relevant statute had to defer to "permissible" agency interpretations, "even if not 'the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Id*. at 2264 (quoting *Chevron*, 467 U.S. at 843 n.11). The doctrine was often conceptualized as proceeding in three distinct steps. At "Step Zero," the reviewing court determined whether the agency interpretation in question was authoritative. *Ali v. Barr*, 951 F.3d 275, 278–79 (5th Cir. 2020). At "Step One," the court asked whether the statutory provision was unambiguous, in which case any contrary agency interpretation would be disregarded. *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 963 (5th Cir. 2023) (quoting *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 433 (5th Cir. 2021)).

But if the statute was "silent or ambiguous as to the specific issue," then at "Step Two" the court asked whether the agency's interpretation was "a permissible construction of the statute." *Id*. (quoting *Huawei Technologies*, 2 F.4th at 433). In short, a court was "obliged to accept the agency's position if Congress ha[d] not previously spoken to the point at issue and the agency's interpretation [was] reasonable." *United States v. Mead Corp*., 533 U.S. 218, 229 (2001).

The *Chevron* doctrine proved controversial, and many called for it to be reconsidered. *See*, *e.g.*, *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149–58 (10th Cir. 2016) (Gorsuch, J., concurring) (critiquing *Chevron* under separation of powers principles and the text of the APA). But as we were bound to do, we continued to "name *Chevron*, and apply its precedent—until and unless it [was] overruled by our highest Court." *Mexican Gulf Fishing Co.*, 60 F.4th at 963 n.3.

The Supreme Court has now done so. "*Chevron* is overruled." *Loper Bright*, 144 S. Ct. at 2273. In its place, the Court has instructed that we are to return to the APA's basic textual command: "independently interpret[ing] the statute and effectuat[ing] the will of Congress." *Id*. at 2263. Courts are constantly faced with statutory ambiguities and genuinely hard cases. But "instead of declaring a particular party's reading 'permissible' in such a case, courts use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Id*. at 2266.

*Rest. L. Ctr.*, 2024 WL 3911308, at *5.

In furtherance of the new *Loper Bright* analytical landscape and in rejecting the Final Rule as an impermissible act of legislation (rather than interpretation of the FLSA), the Fifth Circuit found persuasive the following analysis:

> [A] waitress doing typical waitress duties remains a waitress, even if (in five-minute increments throughout her workweek) she spends 60 percent of her time waiting tables, 10 percent cleaning tables, 10 percent toasting bread, 10 percent making coffee, and 10 percent washing dishes. The dual jobs regulation—and common sense—tells us that the waitress is 100 percent engaged in the single tipped occupation of waitressing—she is not 60 percent a waitress, 10 percent a janitor, 10 percent a baker, 10 percent a barrista [*sic*], and 10 percent a dishwasher.

*Rest. L. Ctr.*, 2024 WL 3911308, at *7.

As the Fifth Circuit explained: "this conceptual difficulty with the 80/20 guidance is even further exacerbated by the Final Rule's additional 30-minute requirement. At minute 31, a server who has been 'setting and bussing tables' is no longer engaged in her tipped occupation even though the duty itself has not changed." *Rest. L. Ctr.*, 2024 WL 3911308, at *7.

The Fifth Circuit found the logical problem created by the Final Rule exacerbated in the case of idle time, as follows:

> Time that a server spends idle during a slow shift, for example, is defined as directly supporting work subject to the 20-percent and 30-minute limits. 29 C.F.R. § 531.56(f)(3)(i); 86 Fed. Reg. 60,114, 60,130. Therefore, if the server is idly standing by to serve customers for 21 percent of his workweek, or for 31 continuous minutes, he is no longer engaged in his occupation and is no longer a tipped employee for the

duration of that excess time. What occupation, then, would he be engaged in? The Final Rule creates a paradox that is not obviously capable of resolution.

*Rest. L. Ctr.*, 2024 WL 3911308, at \*7.

As such, the Fifth Circuit concluded that the Final Rule "applies the tip credit in a manner inconsistent with the FLSA's text." *Rest. L. Ctr.*, 2024 WL 3911308, at \*9. Accordingly, the court deemed the Final Rule to be "not in accordance with law[;]" *Id.* (citing 5 U.S.C. § 706(2)(A)); and concluded that "vacatur is the proper remedy." *Id.* at \*11.

### C.   <u>The Final Rule Has Been Vacated Throughout the Country, Thereby Reviving the Original Dual Jobs Regulation Which Did NOT Contain the 80/20 Rule or the 30 Continuous Minutes Rule</u>

The Administrative Procedures Act requires a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

As explained by the Court of Appeals for the District of Columbia Circuit,[5] "[t]o 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind;

---

[5] For obvious reasons, the D.C. Circuit is a leading authority on the Administrative Procedures Act. As Chief Justice John Roberts—who previously served on the D.C. Circuit—recently opined, the judges on the D.C. Circuit might vacate a regulation "five times before breakfast." *See* Ronald M. Levin, <u>Vacatur, Nationwide Injunctions, and the Evolving APA</u>, 98 Notre Dame L. Rev. 1997, 1999-2001 (2023).

to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'" *Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (citing 91 C.J.S. Vacate (1955), and *Stewart v. Oneal*, 237 F. 897, 906 (6th Cir. 1916)).

Similarly, a leading law review article explains: "vacatur leaves no rule (or provision) in place to enforce against anyone." Mila Sohoni, THE POWER TO VACATE A RULE, 88 Geo. Wash. L. Rev. 1121, 1122 (2020); *see also* Jonathan F. Mitchell, THE WRIT-OF-ERASURE FALLACY, 104 Va. L. Rev. 933, 1012-13 (2018) ("This statutory power to 'set aside' agency action is more than a mere non-enforcement remedy. It is a veto-like power that enables the judiciary to formally revoke an agency's rules, orders, findings, or conclusions--in the same way that an appellate court formally revokes an erroneous trial-court judgment. In these situations, the courts do hold the power to 'strike down' an agency's work, and the disapproved agency action is treated as though it had never happened.") (footnotes omitted); *see also* Ronald M. Levin, Vacatur, Nationwide Injunctions, and the Evolving APA, 98 Notre Dame L. Rev. 1997, 1999–2001 (2023) (discussing the perspectives of various Supreme Court justices concerning the effect of vacating a regulation).

Nearly every Court of Appeals to consider the issue, including the Eleventh Circuit, has concluded that vacatur is the proper remedy when a regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law," as required by APA § 706(2)(A), and that vacatur returns the force of law to the prior existing regulation. *See Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989); *Legal Env't Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467, 1478 (11th Cir. 1997); *Prometheus Radio Project v. F.C.C.*, 652 F.3d 431, 454 n.25 (3d Cir. 2011); *Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005); *Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 797 (D.C. Cir. 1983); *N. Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 770 (4th Cir. 2012); *Chamber of Com. of United States of Am. v. United States Dep't of Lab.*, 885 F.3d 360, 388 (5th Cir. 2018); *Mason Gen. Hosp. v. Sec'y of Dep't of Health & Hum. Servs.*, 809 F.2d 1220, 1223 (6th Cir. 1987); *H & H Tire Co. v. U. S. Dep't of Transp.*, 471 F.2d 350, 355 (7th Cir. 1972); *Menorah Med. Ctr. v. Heckler*, 768 F.2d 292, 297 (8th Cir. 1985).

In this case, the prior Dual Jobs regulation—which lacks the 30-minute rule and the 80/20 Rule, and which specifically allows waiters to engage in supporting work without losing their status as "tipped employees"—is reinstated, and the legal basis for Plaintiff's Second Amended Complaint has disappeared.

### D.    This Court Should NOT Follow the Eleventh Circuit's Decision in *Rafferty v. Denny's, Inc.* to Graft an 80/20 Rule onto the Dual Jobs Regulation

Plaintiff has indicated his intent to rely upon *Rafferty v. Denny's, Inc.*, 13 F.4th 1166 (2021), to justify the maintenance of his "80/20 Rule" claim despite the

invalidation of the Dual Jobs Final Rule. This would be the improper result for, *inter alia*, the following reasons: First, *Rafferty* claims to apply "traditional tools of interpretation" to resolve an ambiguity in the prior Dual Jobs regulation without asking, as required, whether the regulation (or the DOL's interpretation of same) is permissible under the statutory language of the FLSA.[6] *Id.* at 1188-90. Second, *Rafferty* specifically gives deference to "thirty years of DOL interpretation of the dual-jobs regulation," which contravenes the instructions in *Loper Bright* that the "law of deference," which the Supreme Court had built on the back of *Chevron*, was inconsistent with the design of the APA.[7] *Id.* at 1189. Third, *Rafferty* misapplies the "traditional tools of interpretation" that it claims to employ, for example, by "interpreting" words—indeed to the point of breaking out the dictionary and providing definitions—despite the fact that the words being interpreted do not appear in either the regulation or the statute.[8] *Id.* at 1188-89. Fourth, the Eleventh

---

[6] *Loper Bright*, 144 S. Ct. at 2263 ("the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits").

[7] *Loper Bright*, 144 S. Ct. at 2265 ("Neither *Chevron* **nor any subsequent decision of this Court** attempted to reconcile its framework with the APA. The "law of deference" that this Court has built on the foundation laid in *Chevron* has instead been '[h]eedless of the original design' of the APA.") (emphasis added).

[8] The Eleventh Circuit defines "infrequently," for example, despite the fact that the word is absent from either the Dual Jobs regulation or the FLSA tip credit provisions. *Rafferty*, 13 F.4th at 1189. Similarly, the Eleventh Circuit defines "substantial," which is also not found in either the Dual Jobs regulation or the FLSA tip credit provisions. *Id.* Moreover, the Eleventh Circuit opines about the word

Circuit's decision to follow the DOL's internal, interpretive guidance and tack an "80/20 rule" onto a regulation that does not otherwise contain it creates instability in the "law," as seen by the agency's recent flipflopping on the 80/20 concept each time a President is elected from a new political party.[9] Fifth, national restaurant chains should not have to navigate a federal regulatory landscape where the "80/20 Rule" exists in some jurisdictions, *e.g.*, the Eleventh Circuit, but not in others, *e.g.*,

---

"occasionally," as if it were used in the regulation to modify all possible related duties a tipped employee might perform. *Id.* at 1188-89. However, in context, the word only modifies one of a list of possible related duties for a single profession. Under the Dual Jobs regulation, a waiter may "***occasionally*** wash[] dishes or glasses." 29 C.F.R. § 531.56(e) (effective Sept. 28, 1967 to May 5, 2021). However, without the use of the word "occasionally," the Dual Jobs regulation tells us that a waiter may use "part of her time cleaning and setting tables, toasting bread, [and] making coffee…." *Id.* Likewise, without any reference to the word "occasionally" whatsoever, the Dual Jobs regulation tells us that a counterman may "take[] a turn as a short order cook for the group" without being deemed to have performed a second job. *Id.* Notably, "twenty percent" is nowhere to be found in the regulation, and the Eleventh Circuit strains to rely upon the definitions of words that are also not found in the regulation to support a conclusion that "a twenty-percent limitation reasonably construes the dual-jobs regulation." *Rafferty*, 13 F.4th at 1188-89.

[9] *See* Footnote 4, *supra*. Likewise, the Supreme Court has explained: "Rather than safeguarding reliance interests, *Chevron* affirmatively destroys them. Under *Chevron*, a statutory ambiguity, no matter why it is there, becomes a license authorizing an agency to change positions as much as it likes, with '[u]nexplained inconsistency' being 'at most … a reason for holding an interpretation to be … arbitrary and capricious.' *Brand X*, 545 U.S. at 981, 125 S.Ct. 2688. But statutory ambiguity, as we have explained, is not a reliable indicator of actual delegation of discretionary authority to agencies. *Chevron* thus allows agencies to change course even when Congress has given them no power to do so. By its sheer breadth, *Chevron* fosters unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Loper Bright*, 144 S. Ct. at 2272.

the Fifth Circuit. To properly follow the directives of congress, the FLSA should be interpreted both (a) correctly, and (b) uniformly throughout the nation.[10]

It is, of course, legally and practically understandable why the Eleventh Circuit decided *Rafferty* the way it did, when it did. *Rafferty* was published before the Supreme Court decided *Loper Bright*, and so the Eleventh Circuit did not have the benefit of *Loper Bright* and its rejection of the deferential standard to assist the analysis. *Rafferty* was also decided and published before the Fifth Circuit struck down the Final Rule, including the DOL's regulatory implementation of the 80/20 concept. Likewise, the Final Rule was scheduled to become effective a mere two months after the *Rafferty* decision was published. In that context, if the Eleventh Circuit concluded that the 80/20 Rule "reasonably construes the dual-jobs regulation," what could be the harm? The new Final Rule would be effective in two months anyway, and it would officially implement the 80/20 Rule.

The context in which *Rafferty* was decided—pre-*Loper Bright*, pre-*Restaurant Law Center*, and post-publication of the Final Rule—makes it

---

[10] "Nor does a desire for the uniform construction of federal law justify *Chevron*. Given inconsistencies in how judges apply *Chevron*, *see infra.*, at 2270 – 2272, it is unclear how much the doctrine as a whole (as opposed to its highly deferential second step) actually promotes such uniformity. In any event, there is little value in imposing a uniform interpretation of a statute if that interpretation is wrong. We see no reason to presume that Congress prefers uniformity for uniformity's sake over the correct interpretation of the laws it enacts." *Loper Bright*, 144 S. Ct. at 2267.

distinguishable, and even if it is not, there is a good faith basis to believe the Eleventh Circuit would rule differently based upon the current state of the law. Respectfully, *Rafferty* should not be followed, and the Court should hold based upon *Loper Bright* and *Restaurant Law Center* that Plaintiff's Second Amended Complaint fails to state a claim based upon the non-existent "80/20 Rule," and the never-existed "30 continuous minutes rule" as well.

## IV.    <u>CONCLUSION</u>

It simply does not matter whether the Plaintiff or the opt-in Plaintiffs have spent 30 continuous minutes idle, or performing supporting work, or whether their supporting work makes up 20 percent or more of their time. Under the version of the Dual Jobs regulation which is once again in effect, these employees continue to be "tipped employes," and the only question is whether they have earned, on average, more than $30 in tips per month. The manner in which Plaintiff has alleged his Second Amended Complaint, which directly relies upon the now-vacated Final Rule, fails as a matter of law, regardless of whether the Court credits the factual allegations of the pleading.

For the foregoing reasons, Defendant Hard Rock Cafe respectfully requests judgment on the pleadings dismissing Plaintiff's Second Amended Complaint to the extent that it relies upon the now-vacated Final Rule. Granting this motion would leave a collective action alleging that Defendant did not provide proper notice to

each of its workers of its intent to take a tip credit, which, given the overwhelming evidence, will be defeated on the merits after decertification.

    Respectfully submitted this 3rd day of September, 2024.

> /s/ F. Beau Howard
> F. Beau Howard
> Ga. Bar No. 142641
> Eileen Oakes Muskett, *Pro Hac Vice*
> Colin Dougherty, *Pro Hac Vice*
> Adam Busler, *Pro Hac Vice*
> Lauren A. Wright, *Pro Hac Vice*
> Fox Rothschild LLP
> 999 Peachtree Street, N.E., Suite 1500
> Atlanta, Georgia 30309
> (404) 870-3763
> fbhoward@foxrothschild.com
> emuskett@foxrothschild.com
> cdougherty@foxrothschild.com
> abusler@foxrothschild.com
> laurenwright@foxrothschild.com
>
> *Attorneys for Defendant Hard Rock*
> *Cafe International (STP), Inc.*

# Appendix 1

⚑ KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or Preempted Held Invalid   Restaurant Law Center v. United States Department of Labor,   5th Cir.(Tex.),   Aug. 23, 2024

---

Code of Federal Regulations
  Title 29. Labor
    Subtitle B. Regulations Relating to Labor
      Chapter V. Wage and Hour Division, Department of Labor
        Subchapter A. Regulations
          Part 531. Wage Payments Under the Fair Labor Standards Act of 1938 (Refs & Annos)
            Subpart D. Tipped Employees (Refs & Annos)

---

29 C.F.R. § 531.56

§ 531.56 "More than $30 a month in tips."

Effective: December 28, 2021
Currentness

<In the Fifth Circuit Court of Appeals decision vacating the engaged in a tipped occupation rule, 29 C.F.R. § 531.56(f), the court stated that "[b]ecause the Final Rule is contrary to the Fair Labor Standards Act's clear statutory text, it is not in accordance with law. And because it imposes a line-drawing regime that Congress did not countenance, it is arbitrary and capricious." See, Rest. L. Ctr. v. United States Dep't of Lab., --- F.4 th ---, 2024 WL 3911308 (5th Cir. Aug. 23, 2024).>

(a) In general. An employee who receives tips, within the meaning of the Act, is a "tipped employee" under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total "more than $30 a month." An employee employed in an occupation in which the tips he or she receives meet the minimum standard in the preceding sentence is a "tipped employee" for whom the wage credit provided by section 3(m)(2)(A) may be taken in computing the compensation due him or her under the Act for employment in such occupation, whether he or she is employed in it full time or part time. An employee employed full time or part time in an occupation in which he or she does not receive more than $30 a month in tips customarily and regularly is not a "tipped employee" within the meaning of the Act and must receive the full compensation required by the provisions of the Act in cash or allowable facilities without any deduction for tips received under the provisions of section 3(m)(2)(A).

(b) Month. The definition of tipped employee does not require that the calendar month be used in determining whether more than $30 a month is customarily and regularly received as tips. Any appropriate recurring monthly period beginning on the same day of the calendar month may be used.

(c) Individual tip receipts are controlling. An employee must him- or herself customarily and regularly receive more than $30 a month in tips in order to qualify as a tipped employee. The fact that he or she is part of a group which has a record of receiving more than $30 a month in tips will not qualify him or her. For example, a server who is newly hired will not be considered a tipped employee merely because the other servers in the establishment receive tips in the requisite amount. For the method of applying the test in initial and terminal months of employment, see § 531.58.

---

(d) Significance of minimum monthly tip receipts. More than $30 a month in tips customarily and regularly received by the employee is a minimum standard that must be met before any wage credit for tips is determined under section 3(m)(2)(A). It does not govern or limit the determination of the appropriate amount of wage credit under section 3(m)(2)(A) that may be taken for tips under section 6(a)(1) (tip credit equals the difference between the minimum wage required by section 6(a)(1) and the cash wage paid (at least $2.13 per hour)).

(e) Dual jobs. In some situations an employee is employed in dual jobs, as, for example, where a maintenance person in a hotel also works as a server. In such a situation if the employee customarily and regularly receives at least $30 a month in tips for the employee's work as a server, the employee is engaged in a tipped occupation only when employed as a server. The employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person.

(f) Engaged in a tipped occupation. An employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation. An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation.

(1) Work that is part of the tipped occupation. Work that is part of the tipped occupation is:

(i) Work that produces tips; and

(ii) Work that directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time.

(2) Tip-producing work.

(i) Tip-producing work is any work performed by a tipped employee that provides service to customers for which the tipped employee receives tips.

(ii) Examples: The following examples illustrate tip-producing work performed by a tipped employee that provides service to customers for which the tipped employee receives tips. A tipped employee's tip-producing work includes all aspects of the service to customers for which the tipped employee receives tips; this list is illustrative and is not exhaustive. A server's tip-producing work includes providing table service, such as taking orders, making recommendations, and serving food and drink. A bartender's tip-producing work includes making and serving drinks, talking to customers at the bar and, if the bar includes food service, serving food to customers. A nail technician's tip-producing work includes performing manicures and pedicures and assisting the patron to select the type of service. A busser's tip-producing work includes assisting servers with their tip-producing work for customers, such as table service, including filling water glasses, clearing dishes from tables, fetching and delivering items to and from tables, and bussing tables, including changing linens and setting tables. A parking attendant's tip-producing work includes parking and retrieving cars and moving cars in order to retrieve a car at the request of customer. A service bartender's tip-producing work includes preparing drinks for table service. A hotel housekeeper's tip-producing work includes cleaning hotel rooms. A hotel bellhop's tip-producing work includes assisting customers with their luggage. The tip-producing work of a tipped employee who both prepares and serves food to customers, such as a counterperson, includes preparing and serving food.

(3) Directly supporting work.

(i) Directly supporting work is work performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work.

(ii) Examples: The following examples illustrate tasks that are directly supporting work when they are performed in preparation of or to otherwise assist tip-producing customer service work and when they do not provide service to customers. This list is illustrative and is not exhaustive: A server's directly supporting work includes dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables. A busser's directly supporting work includes pre- and post-table service prep work such as folding napkins and rolling silverware, stocking the busser station, and vacuuming the dining room, as well as wiping down soda machines, ice dispensers, food warmers, and other equipment in the service alley. A bartender's directly supporting work includes work such as slicing and pitting fruit for drinks, wiping down the bar or tables in the bar area, cleaning bar glasses, arranging bottles in the bar, fetching liquor and supplies, vacuuming under tables in the bar area, cleaning ice coolers and bar mats, making drink mixes, and filling up dispensers with drink mixes. A nail technician's directly supporting work includes cleaning pedicure baths between customers, cleaning and sterilizing private salon rooms between customers, and cleaning tools and the floor of the salon. A parking attendant's directly supporting work includes cleaning the valet stand and parking area, and moving cars around the parking lot or garage to facilitate the parking of patrons' cars. A service bartender's directly supporting work includes slicing and pitting fruit for drinks, cleaning bar glasses, arranging bottles, and fetching liquor or supplies. A hotel housekeeper's directly supporting work includes stocking the housekeeping cart. A hotel bellhop's directly supporting work includes rearranging the luggage storage area and maintaining clean lobbies and entrance areas of the hotel.

(4) Substantial amount of time. An employer can take a tip credit for the time a tipped employee spends performing work that is not tip-producing, but directly supports tip-producing work, provided that the employee does not perform that work for a substantial amount of time. For the purposes of this section, an employee has performed work for a substantial amount of time if:

(i) The directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance. Time for which an employer does not take a tip credit is excluded in calculating the 20 percent tolerance; or

(ii) For any continuous period of time, the directly supporting work exceeds 30 minutes. If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes. Time in excess of the 30 minutes, for which an employer may not take a tip credit, is excluded in calculating the 20 percent tolerance in paragraph (f)(4)(i) of this section.

(5) Work that is not part of the tipped occupation.

(i) Work that is not part of the tipped occupation is any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work. If a tipped employee is required to perform work that is not part of the employee's tipped occupation, the employer may not take a tip credit for that time.

(ii) Examples: The following examples illustrate work that is not part of the tipped occupation because the work does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work. This list is illustrative and is not exhaustive. Preparing food, including salads, and cleaning the kitchen or bathrooms, is not part of the tipped occupation of a server. Cleaning the dining room or bathroom is not part of the tipped occupation of a bartender. Ordering supplies for the salon is not part of the tipped occupation of a nail technician. Servicing vehicles is not part of the tipped occupation of a parking attendant. Cleaning the dining room and bathrooms is not part of the tipped occupation of a service bartender. Cleaning non-residential parts of a hotel, such as the exercise room, restaurant, and meeting rooms, is not part of the tipped occupation of a hotel housekeeper. Cleaning the kitchen or bathrooms is not part of the tipped occupation of a busser. Retrieving room service trays from guest rooms is not part of the tipped occupation of a hotel bellhop.

**Credits**

[76 FR 18855, 18856, April 5, 2011; 77 FR 38718, June 29, 2012; 85 FR 86790, Dec. 30, 2020; 86 FR 11632, Feb. 26, 2021; 86 FR 22597, April 29, 2021; 86 FR 60114, 60157, Oct. 29, 2021]

SOURCE: 32 FR 13575, Sept. 28, 1967; 76 FR 18854, April 5, 2011; 76 FR 18855, April 5, 2011; 85 FR 86789, Dec. 30, 2020; 86 FR 11632, Feb. 26, 2021, unless otherwise noted.

AUTHORITY: 29 U.S.C. 203(m) and (t), as amended by sec. 3(m), Pub.L. 75–718, 52 Stat. 1060; sec. 2, Pub.L. 87–30, 75 Stat. 65; sec. 101, sec. 602, Pub.L. 89–601, 80 Stat. 830; sec. 29(B), Pub.L. 93–259, 88 Stat. 55 sec. 3, sec. 15(c), Pub.L. 95–151, 91 Stat 1245; sec. 2105(b), Pub.L. 104–188, 110 Stat 1755; sec. 8102, Pub.L. 110–28, 121 Stat. 112; and sec. 1201, Div. S., Tit. XII, Pub.L. 115–141, 132 Stat. 348.

Notes of Decisions (43)

Current through Aug. 30, 2024, 89 FR 71121. Some sections may be more current. See credits for details.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## **CERTIFICATE OF COMPLIANCE**

Counsel for Defendant certifies that this document has been prepared in a Times New Roman, 14-point font and otherwise complies with LR 5.1(C), NDGa.

This 3rd day of September, 2024.

*/s/ F. Beau Howard*

F. Beau Howard
Ga. Bar No. 142641
fbhoward@foxrothschild.com

*Attorneys for Defendant Hard Rock Cafe International (STP), Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing **Motion for Judgment on the Pleadings** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Alanna Klein Fischer <alanna@lazzarolawfirm.com>
Anthony J. Lazzaro <anthony@lazzarolawfirm.com>
Arnold James Lizana <alizana@attorneylizana.com>
Colin D. Dougherty <cdougherty@foxrothschild.com>
Don J. Foty <dfoty@hftrialfirm.com>
Eileen Oakes Muskett <emuskett@foxrothschild.com>
Fletcher Beaumont Howard <fbhoward@foxrothschild.com>
Adam Busler <abusler@foxrothschild.com>
Lauren A. Wright <laurenwright@foxrothschild.com>
Lori M. Griffin <lori@lazzarolawfirm.com>
Matthew S. Grimsley <matthew@lazzarolawfirm.com>

This 3rd day of September, 2024,

*/s/ F. Beau Howard*
F. Beau Howard
Ga. Bar No. 142641
fbhoward@foxrothschild.com

*Attorneys for Defendant Hard Rock Cafe International (STP), Inc.*

- 22 -